653 So.2d 48 (1995)
Michael Keith HENSGENS, Plaintiff-Appellee,
v.
Patricia Adams HENSGENS, Defendant-Appellant.
No. 94-1200.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1995.
Rehearing Denied May 15, 1995.
*50 Paula Kobetz Woodruff, Lafayette, for Michael Keith Hensgens.
Andre Doguet, Rayne, for Patricia Adams Hensgens.
Before KNOLL, THIBODEAUX, and SAUNDERS, JJ.
KNOLL, Judge.
This appeal concerns issues involving post-divorce child custody. The primary question, as framed by the trial court, was whether it was in the best interest of the children to redesignate the father as the domiciliary parent should the mother decide to move from Crowley, the life-long home of the children, to Baton Rouge, the home of her future husband; the mother had been designated as the domiciliary parent in an earlier stipulated child custody implementation plan. The trial court ruled that the proposed intrastate move of the mother, Patricia Adams Hensgens (Patricia), with her two sons was not in the best interest of the children. Nevertheless, the trial court deferred judgment on the motion of Michael Keith Hensgens (Michael), the father, for a change in the designation of the domiciliary parent to give the parents an opportunity to resolve their differences in a manner not inconsistent with the trial court's findings.
Patricia appeals, contending that the trial court committed manifest error: (1) in misapplying the burden of proof requirements governing modification of child custody; (2) in holding that Michael met his burden of proving that the move to Baton Rouge would materially impact the welfare of the children and that transferring custody to him would be in the children's best interest; (3) in holding that the expert testimony of Dr. Lyle LeCorgne, a clinical psychologist, was sufficient evidence that a move to Baton Rouge would be detrimental to the children; (4) in failing to require Michael to prove his case for change in custody by a preponderance of the evidence and in imposing a more burdensome standard of proof on her; (5) in denying her motion for involuntary judgment of dismissal at the close of Michael's case; (6) in failing to consider the stated preferences of the children to remain with their mother and move to Baton Rouge; and (7) conditioning the designation of Patricia as the domiciliary parent on her remaining in the city of Crowley. We reverse and remand.

FACTS
Michael and Patricia, residents of Crowley, Louisiana, were divorced by judgment of the trial court on June 18, 1992. Under the terms of a custody implementation plan dated May 20, 1992, the parties agreed to share joint custody of their two sons, Josef and Adam, ages 8 and 6, respectively, at the time of the agreement; Patricia was named the domiciliary parent, subject to "reasonable visitation" rights in favor of Michael.[1] The implementation plan stated:
Neither party shall move from the parish without first giving sixty (60) days advance written notice by certified mail to the other person so that adequate adjustments can be made concerning visitation, custody, support and the costs and expenses of sharing transportation concerning visitation with the children should the move actually take place. If the parties cannot reach a voluntary agreement concerning the change of residence by one or both of them, this will give the Court adequate time to make a ruling on those circumstances which may differ from what is contemplated herein because of the proposed move.
On December 4, 1993, Patricia sent Michael a certified letter notifying him that she planned to remarry during the following summer and that she intended to move with the two boys to her new husband's home in Baton Rouge, Louisiana. Michael would not consent to the proposed move, stating that he *51 believed that it was best for the two boys to remain in Crowley. On April 7, 1994, Patricia filed a rule nisi, requesting the trial court to fix periods of physical custody and visitation to take into account the children's anticipated move to Baton Rouge. On May 2, 1994, Michael filed a petition to change custody, seeking to have himself designated as the domiciliary parent of the two boys.
After conducting an evidentiary hearing, the trial court held that it would not be in the best interest of the children to be removed from their home in Crowley. However, since it felt that Patricia might reconsider her decision to relocate to Baton Rouge, the trial court did not order the substitution of Michael as the domiciliary parent. Instead, the trial court stated:
[J]udgment on the Motion for Change in Domiciliary Parent filed by Michael Keith Hensgens is deferred in order to allow time for the parties to reach a resolution not inconsistent with the findings of the court, pending which all terms of any previous joint custody decrees and plans of implementation shall remain in full force and effect.
Because of its ruling on Michael's petition, the trial court denied Patricia's motion to set visitation, finding it moot.

TRIAL COURT'S DEFERRED IMPLEMENTATION OF JUDGMENT
We have chosen to take the issues somewhat out of order since we find that our discussion in the opinion will be better framed by first commenting upon the trial court's decision to delay implementation of its judgment. By deciding to take this issue first, we further find that it aids in understanding why we have chosen to address all the issues raised on appeal, instead of pretermitting discussion of all but the question of whether a change of circumstances has been proven.
We preface our remarks by stating that it is clear to us after reading the transcript and the trial court's written reasons that the trial court was faced with a difficult decision since it was undisputed that Patricia and Michael were exemplary providers and care givers. We likewise sense that it was because of the equality of Patricia and Michael in their care for their children, that the trial court chose to implement a change of custody only if Patricia decided to move with the children to Baton Rouge. Although the trial court's intentions may have been well intended, we nevertheless hasten to point out that it is a well recognized tenet of Louisiana jurisprudence that an award of child custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 383 So.2d 1231 (La.1979). Even though that rule of law has been applied in instances involving a spouse's behavior that may have been less than wholesome, not the facts before us, we find that the trial court in the casesub judice has effectively regulated Patricia's intrastate relocation by rendering an advisory opinion and then suspending its application.
Because we find that the trial court essentially provided an advisory opinion, we will address the threshold issue of whether there was a change of circumstances proven. Moreover, since the trial court based its ruling on the question of the children's best interest, we feel compelled to also address that determination since we find that it erred in its conclusions in this regard. In so doing, we hope to foreclose relitigation of these facts thereby insuring the stability of the children's custodial environment, one of the underpinnings for the development of the change of circumstances rule in the jurisprudence.

BURDEN OF PROOF
Patricia first contends that the trial court erred by applying an incorrect burden of proof in its analysis of the issues. She argues that the trial court improperly held that she and Michael equally shared the burden of establishing by a preponderance of the evidence which custodial arrangement would best serve the interest of the children. Instead, she asserts that the trial court should have required Michael, as the moving party seeking to change the custodial arrangement, to prove a material change in circumstances and that his proposed change in domiciliary custody was in the best interest of the children.
*52 The paramount consideration in any determination of child custody is the best interest of the child. LSA-C.C. Art. 131. However, in actions to change custody decisions rendered in considered decrees, an additional jurisprudential requirement is imposed. In such actions the proponent of the change bears a heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that the harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Barnes v. Cason, 25,808 (La.App. 2nd Cir. 5/4/94), 637 So.2d 607, writ denied, 94-1325 (La. 9/2/94), 643 So.2d 149. In cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in Bergeron is inapplicable.
In the present case, it is undisputed that the May 20, 1992, joint custody implementation plan was not a considered decree. Accordingly, the heavy burden of proof rule of Bergeron was inapplicable. However, even though the trial court correctly determined that the Bergeron rule did not apply, we find that the trial court erred in its reliance on Owen v. Gallien, 477 So.2d 1240 (La.App. 3rd Cir.1985), when it determined that Michael and Patricia shared equally the burden of establishing by a preponderance of the evidence the custodial arrangement which will best serve their children. As recognized in Mosely v. Mosely, 499 So.2d 106 (La.App. 1st Cir.1986), writ denied, 505 So.2d 1138 (La.1987), the change in circumstances rule is distinct from the heavy burden of proof rule for modification of custody. In conformity with Mosely, this circuit has held since Bergeron that the party seeking a modification of a consent decree must nonetheless prove that there has been a material change of circumstances since the original custody decree was entered and that the proposed modification is in the best interest of the child. R.J.R. v. J.A.I.R.C., 625 So.2d 374 (La.App. 3rd Cir.1993), writ denied, 93-2741 (La. 1/7/94), 631 So.2d 450; Kleiser v. Kleiser, 619 So.2d 178 (La.App. 3rd Cir. 1993); Chandler v. Grass, 600 So.2d 852 (La. App. 3rd Cir.1992); Beard v. Beard, 599 So.2d 486 (La.App. 3rd Cir.1992); Sandifer v. Sandifer, 514 So.2d 510 (La.App. 3rd Cir. 1987).
In the present case Michael sought to modify the present custody plan to have himself designated the domiciliary parent of his two sons. Unlike Michael, Patricia's rule nisi did not seek to change the custodial arrangement. Instead, her request was that the trial court set visitation rights which were never set in the original custody implementation plan. Accordingly, it is clear that Michael, not Patricia, had the initial burden of proof in the present case. Consequently, it was incumbent upon Michael to prove that a change of circumstances materially affecting the welfare of his sons had occurred since the original decree and that the modification he proposed was in the best interest of the children. Kleiser, supra.

PROOF: CHANGE OF CIRCUMSTANCES
Patricia contends that the trial court erred in finding that Michael proved by a preponderance of the evidence that there was a change in circumstances. She argues that the trial court improperly considered her proposed relocation a per se change in circumstances that materially affected the welfare of the children.
This case presents us with an instance in which, at the time of the hearing in the trial court, Patricia, the domiciliary parent, had not yet remarried and the children had not yet moved from Crowley. Thus, at the time of the hearing, the trial court was asked, in essence, to rule on Michael's motion to change custody by examining the facts of the anticipated move pursuant to the provisions of the parties' custody implementation plan. After carefully reviewing the jurisprudence of this state, we have been unable to find an appellate court decision that has considered a *53 motion to change custody that was filed before a reasonably anticipated act has taken place.[2]
Initially, we find that Ponze v. Ponze, 614 So.2d 720 (La.App. 5th Cir.), writ denied, 617 So.2d 941 (La.1993), a case relied upon by Michael, is distinguishable. In Ponze the mother was remarried and had moved with the child to Ohio when the husband brought suit for a change in custody. In the present case, Patricia was not yet remarried and her move with the boys to Baton Rouge had not taken place. Moreover, we decline to follow Ponze since we find that it created a new standard for the burden of proof, i.e., one that did not require the party seeking a change in custody to show a change in circumstances; instead it placed the parents on equal footing as enforcers of a procedure agreed upon in the custody decree. To this extent we find that Ponze deviates from well established Louisiana jurisprudence and should not be followed.[3]
Underscoring the problem which these prospective facts presented, the trial court stated in its written reasons:
The job [of the trial court] boils down to a balancing of the advantages of moving the children to the new domicile of their mother so they can continue in her care against the possible negative impact of "uprooting" them from the environment in Crowley to which they are so accustomed. (Emphasis added).
Thus, in the present case, the trial court was asked to make a decision based only upon anticipated facts that may possibly have a negative impact on the children. Accordingly, we find that the trial court improperly modified a custody decree without a showing of a change of circumstances.
In this same vein, we point out that we failed to uncover any appellate jurisprudence in Louisiana that has held that an intrastate move was a change in circumstance per se. Although the appellate decisions are replete with instances where children were moved out of state, not the equivalent of the facts presented herein, there too we found that not every interstate move has been held to be a change of circumstances that necessitated a modification of custody. Accordingly, we find that an intrastate move is not per se a material change of circumstances such that we may presume that it will materially affect the children's welfare without further evidence. See Smith v. Smith, 615 So.2d 926 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993). Therefore, we find that Michael's claims before the trial court were purely speculative and the issue of a modification of child custody was not ripe for adjudication before the tribunal.
In reaching that determination, we further find that the trial court compounded its error by not only placing a burden of proof on Patricia, but also in holding her to a higher standard of proof. In its written reasons, the trial court stated:
The court finds that the uprooting of children from the environment to which they have grown accustomed over a long period of time is to be avoided unless it can be shown that it is in their best interest to do so based on clear evidence. (Emphasis added).
When the facts of this case are considered, specifically recalling that they are presented as anticipated facts, we find that Patricia was saddled with a burden of proof that she could not meet and was not required to meet.

*54 BEST INTEREST OF THE CHILDREN
Patricia next contends that the trial court erred in finding that Michael proved that his proposed change in domiciliary custody was in the children's best interest. She argues that the expert testimony of Dr. Lyle Le-Corgne, a clinical psychologist, was insufficient to prove that the intrastate move to Baton Rouge would be detrimental to the two boys and that the transfer of domiciliary custody to Michael would serve the best interest of the children. She also argues that the trial court failed to give credence to the stated preferences of the two boys to live with her; at the time of the hearing, the boys were ages 8 and 10, respectively.
The record clearly establishes that Michael and Patricia are exemplary parents who have not allowed their marital differences to interfere with the well-being of their children. Thus, after carefully reviewing the lay testimony presented at the hearing, the trial court stated, "All of the lay testimony in this case makes it clear that both parents play important roles in the lives of these two children, and that either of them could provide an excellent home for them regardless of the location of that home." It is likewise true that Patricia's prospective husband has a good relationship with the boys and his impact on the boys would not be negative.
In addition to the lay testimony, the trial court heard the expert testimony of two child psychologists; Dr. Luke Elliott testified for Patricia and Dr. LeCorgne testified for Michael. In its written reasons for judgment the trial court accurately summarized the clinical psychologists' testimony as follows:
Dr. Luke Elliott spent about three hours with each child testing them to arrive at both an intellectual and personality assessment. Each was found to be functioning in the high average intelligence range, and each was found to be free of any personality disorder. Dr. Lyle LeCorgne adopted these findings and concurred in the opinion that each of the boys was well adjusted and happy. The experts part ways, however, in their opinions on which custodial arrangements would be best for these children.
Dr. Elliott introduces the term "psychological parent," which refers to the parent whom a child perceives as the one to whom the child turns for satisfaction of both emotional and physical needs. He lists the preference of the child as the first and most important determinant in a custody recommendation, and feels that such a preference should be considered very heavily. He feels strongly that each of these children is of sufficient age to express a preference, and the preference of each is to remain with their mother, whom he identifies as the "psychological parent" for each of them.
Therefore, his recommendation is that the children remain with their mother even though it involves a move to Baton Rouge, since she is both the psychological parent and the children's stated preference. His opinion is that the children will develop and adjust more easily and constructively with the parent to whom they feel closer, and to whom they can be more comfortable in expressing their physical and emotional needs, so the advantages of living with the psychological parent outweigh the risk of "uprooting" them from their present environment.
Dr. Elliott maintains that change does not necessarily traumatize children, though it does require a period of adjustment. The thing that carries them through the adjustment is the support and love of the people to whom they feel closest. He disagrees with the proposition that the domiciliary parent usually becomes the psychological parent, and urges that children formulate their preferences independently from their custodial arrangements. He opines that the best interest of the children will be served by continuing as domiciliary parent the one with whom they have the closest relationship and for whom they have stated a preference.
Dr. Lyle LeCorgne disagrees. He testified that both children have very positive, loving and agreeable relationships with each of their parents. He does not feel that these children are of sufficient age to express a preference for their own custodial arrangements, and cautions against relying *55 on stated preferences of younger children.
Dr. LeCorgne maintains that the domiciliary parent usually becomes the psychological parent by virtue of the sheer time spent with the child as well as the exposure to and constant involvement with the child. He also cautions against placing too much emphasis on this aspect of the family relationship since it is an inherent aspect of domiciliary parenthood.
He echoes the views of all the lay witnesses that the parents in this case have an extraordinarily positive post divorce relationship in terms of cordiality and cooperation with each other. He refers to the multiple support systems enjoyed by the children in Crowley including their birth home, school, family, community, extended family, friends and everything familiar to them.
He urges that the kind of weighing that needs to be done involves choices which are going to present the children with the least disruption, the least disorganization and the least amount of loss to which they will have to adjust. These choices coupled with the fact that both boys have attained the age of development where peer groups, peer pressure and peer influence begin to gain prominence in their behavior patterns lead him to the recommendation that these children not be uprooted from their present environment. He feels that the stresses of going to a new school, a new city, new friends, a new home where another boy-child their age is already established, and a new group of peers should be avoided where possible. All of these factors are viewed by Dr. LeCorgne as presenting the opportunity for a potentially negative impact on the children, which can be avoided if they remain in their home community.
He is of the strong opinion that these children would be best served by not having to deal with the multiple losses and subsequent adjustments of relocation, leaving behind all that they know and all that is familiar to them, and in addition, losing direct access to their father. He does not feel that remaining with the psychological parent would outweigh these losses in the balance. He maintains that it would be easier for the children to adjust to a new domiciliary parent than to a totally new environment. His belief is that the children stand to be taken from a substantial part of their lives such that a void will exist that must be refilled. The psychological parent factor alone does not fill this void, nor can it balance the adverse effects. In addition, Dr. LeCorgne feels that the boys are reaching the age where they will benefit from a same-sex parent, especially one who has been uncommonly active, interested and involved in their lives in the past.
We first turn to the question of the trial court's determination not to consider the children's preference to live with their mother. LSA-C.C. Art. 134(9) provides that the trial court should consider the reasonable preference of the children, if it finds them to be of sufficient age to express a preference. A brief survey of the jurisprudence of this circuit shows that children as young as seven years of age have been allowed to indicate their custodial preference. Melancon v. Bergeron, 598 So.2d 694 (La.App. 3rd Cir. 1992). Notwithstanding, the jurisprudence has also held that a child's stated preference alone is insufficient to modify custody. Simmons v. Simmons, 554 So.2d 238 (La.App. 3rd Cir.1989).
In the case sub judice, the trial court stated it would give little consideration to the preferences of an eight and ten year old because they did not express reasons to the psychologists for their preference to live with their mother.[4] In light of that, the trial court said that it was unable to determine the reasonableness of their preferential choice. We respectfully disagree, finding that the record shows otherwise.
The record shows that Dr. Elliott extensively tested the two boys. He stated that the two boys were functioning at a higher mental age than their chronological age. He said that Adam, the younger of the two, *56 expressed himself clearly, in a well organized fashion, and that he willingly stated his preference to live in Baton Rouge with his mother. Josef, the older son, likewise reasoned above his chronological age and also clearly stated his preference to live with his mother. In validating their preferences, Dr. Elliott stated that the boys used words and sentences appropriate to their age and mental ability and gave no indication of having their answers coached by an adult; he also said that they were genuine in their expressions and did not appear threatened. In Patricia's attorney's questioning of Dr. Elliott, the following colloquy appears in the record:
Q. What is the importance of the children stating a clear preference to be with their mother?
A. Well, it means quite a lot. It means that they have enough comfort and trust in her, that they would be comfortable with her, literally. It means that they're not neutral. They're not in a situation where they just don't have a preference, you know, and obligated to say something that they don't know. It came up really rather easily with both children, and it was consistent over the two (2) different days that I saw them and the two (2) different types of testing that we were engaged in.
In summation, Dr. Elliott opined that the strength and genuineness of the boys' preference was exhibited by their expressed closeness to their mother and that they were afraid to tell their father of the preference.
In contrast to Dr. Elliott's testimony, the record shows that Dr. LeCorgne met with the boys for a 45 minute period and did not conduct psychological tests, despite his admission that such testing would provide a more complete evaluation of the boys and give him a better appreciation of their developmental maturity. Instead, Dr. LeCorgne simply stated that in the general population it was not until a child was 15 years of age that his statement of custodial preference was valid; he did, however, state that if the child was mature and of a higher intelligence, he might push that age threshold down to 13 years of age.
When we examine the totality of the evidence provided by the clinical psychologists, we find that Dr. Elliott, contrary to the trial court's statement, presented testimony which permitted the trial court to determine the reasonableness of the boys' preference to remain with their mother in Baton Rouge. Accordingly, we further find that in a case such as this where the parents are equally balanced, the trial court erred in failing to assign weight to the children's preference to remain with Patricia.
We also find that the trial court erred in its decision to give more credence to Dr. LeCorgne's opinion that it was in the best interest of the boys to remain in Crowley. Although Dr. LeCorgne founded part of his opinion on the stability the boys will experience if they remain in Crowley, an opinion we do not disagree with, many of the negatives he associated with the move to Baton Rouge were all potentialities; as shown in the section hereinabove, possibilities are not sufficient to base a modification of child custody. We likewise fail to see the significance of Dr. LeCorgne's opinion that the boys were reaching an age that they would benefit from a same-sex parent. As shown by the trial court's decision to suspend its ruling, if the boys did not move to Baton Rouge, they would remain in the domiciliary custody of their mother. Thus, we find that this factor taken alone was insufficient to justify a change in domiciliary parents.
It is well established that stability of environment is a factor taken into account in determining what is in the best interest of the children. A change from a stable environment should not be made absent a compelling reason. Smith, supra. A particular consideration is the length of time the children have been with the domiciliary parent. Rogers v. Rogers, 577 So.2d 761 (La.App. 1st Cir.1991). Based upon the record before us, we do not find that Michael carried his burden of proving that it was in the best interest of the boys that he be designated the domiciliary parent. Although the move of the boys to Baton Rouge will mean that Michael may have less contact *57 with his sons,[5] this factor alone does not necessitate a finding that custody should be moved from Patricia to Michael.
Since the trial court found Patricia's motion to set Michael's visitation privileges moot, it did not reach that issue. Because of our reversal of the trial court's judgment, it is necessary for us to remand this case to the trial court to amend the child custody implementation plan so that Michael's visitation privileges are specified.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and it is ordered, adjudged, and decreed that the motion for change in custody filed by Michael Hensgens is dismissed. This case is remanded to the trial court for consideration of Patricia Hensgens' motion to set visitation privileges. Costs of the trial court and this appeal are assessed to Michael Hensgens.
REVERSED AND REMANDED.
NOTES
[1] The custody implementation plan did not specifically provide for the time the two boys would spend with each parent. As a matter of practice, Michael and Patricia alternated weekends during the school year and agreed between themselves about visitation for holidays and summer vacation.
[2] We looked at Key v. Key, 519 So.2d 319 (La. App. 2nd Cir.1988). Although that case involved a rule filed in anticipation of the domiciliary mother's remarriage and proposed move to Ohio, the judgment was made known to the parties on August 22, 1986, and was not signed until February 6, 1987; at the time the judgment was signed the domiciliary mother's remarriage had taken place and she had moved to Ohio. Also under the facts of the case, it is clear that it is distinguishable from the casesub judice since it involved an interstate move.
[3] Although we agree with the outcome in Ponze, supra, it is a decision which could have used well established appellate jurisprudence on the burden of proof in its resolution of the issues presented. Clearly a change of circumstances had occurred when the rule to change custody was filed, and a change of custody could have been accomplished since it was shown that it was in the best interest of the minor child to change custody. Moreover, we note that our research shows that no appellate case has followed the burden of proof rule used in Ponze, supra.
[4] Patricia and Michael agreed to present evidence of the boys' preference through the boys' conversations with the clinical psychologists. They chose to adopt this procedure so that the boys would not have to participate in person at the court hearing.
[5] As shown in the record, we cannot say that Michael will have less contact with his sons if they move to Baton Rouge. Patricia made it clear that should they move to Baton Rouge, she will make whatever time adjustments are needed to see to it that Michael will be able to spendas much time with his sons as he did when they lived in Crowley.