^MICHAEL E. KIRBY, Judge.
In this matter, Mr. Darius Mimms, Sr. appeals certain rulings of the trial court judgment of May 31, 2002 relating to issues of child custody and visitation.
Mr. Mimms and Ms. Phaedra Brown are the parents of a minor son, Darius Mimms, Jr., who was born on March 8, 1995. Mr. Mimms and Ms. Brown were never married. The relevant procedural history of this case is as follows[1]: On April 8, 1996, Mr. Mimms filed a petition to establish custody and child support. On May 8, 1996, the parties entered into a consent judgment granting the parties joint custody of the minor child, with Ms. Brown designated as the primary domiciliary parent, and awarding Mr. Mimms visitation every other weekend, alternating holidays and extended time during the summer.
A subsequent judgment on Mr. Mimms’ rule to establish custody was rendered on November 22, 1996, along with a judgment implementing the joint custody plan. These judgments did not alter the joint custody arrangement with Ms. Brown as primary domiciliary parent and with Mr. Mimms being granted ^visitation every other weekend, alternating holidays and extended time in the summer, but included more details than the May 8, 1996 judgment.
On November 23, 1996, Mr. Mimms filed a motion asking that Ms. Brown be required to post bond to ensure her compliance with the court’s visitation order. Mr. Mimms also filed a rule for contempt and a request for attorney’s fees in that motion. This motion alleged that Ms. Brown habitually failed to comply with the court’s orders regarding Mr. Mimms’ visitation rights. Ms. Brown was ordered to show cause at a hearing on December 16, 1996 as to why she should not be held in contempt of court and ordered to post a bond to ensure her compliance with the court’s visitation order. On the date of the hearing, Ms. Brown failed to appear in court. After a hearing on Mr. Mimms’ motion, the trial court found Ms. Brown in contempt of court for violating the visitation order, and issued an attachment directed to the Orleans Parish Sheriffs Office to produce Ms. Brown in court on December 20, 1996 but specified that Ms. Brown not be incarcerated. Ms. Brown was also ordered to post bond in the amount of $1,000.00 to ensure future compliance with the visitation order. The trial court also ordered Ms. Brown to pay attorney’s fees and costs of the contempt proceedings.
*39 On February 18, 1997, the trial court issued a second attachment directed to the Orleans Parish Sheriffs Office to produce Ms. Brown in the court on March 24, 1997. This second attachment directed the Sheriffs Office to incarcerate Ms. Brown. On April 14, 1997, Ms. Brown filed a motion for new trial, alleging that she had never being served with notice of the December 16, 1996 hearing. After a 1 shearing on March 24, 1997 at which both parties were present, the trial court rendered an interim judgment ordering Ms. Brown to post bond and pay attornéy’s fees as ordered at the December 16, 1996 hearing and ordering that Mr. Mimms’ visitation with the minor child continue as previously implemented.
On August 13, 1997, Mr. Mimms filed a motion for change of custody, citing Ms. Brown’s continued interference with Mr. Mimms’ visitation rights and alleged threats against Mr. Mimms by members of Ms. Brown’s family. On November 18, 1997, Mr. Mimms filed a motion for provisional custody of the minor child pending the hearing on his motion to change custody, and he also filed another rule for contempt and request for attorney’s fees. On November 20, 1997, the trial court rendered an interim judgment, changing the previous visitation schedule to allow each parent alternating weeklong physical custody of the minor child until further orders of the court.
On December 8, 1997, Mr. Mimms filed another motion for provisional custody, along with another rule for contempt and request for attorney’s fees. In this motion, Mr. Mimms alleged that Ms. Brown was not complying with the terms of the November 20,1997 interim judgment.
On March 27, 1998, the trial court rendered judgment holding Ms. Brown in contempt of court and gave her a suspended sentence of ten days in the Orleans Parish Prison. The court also ordered Ms. Brown to pay attorney’s fees and costs to Mr. Mimms, and continued the visitation schedule of alternating weeklong visits with each parent. The court ordered Ms. Brown to post bond in the amount of | ¿$1,000.00, as previously ordered by the court on December 16, 1996, to ensure her future compliance with the visitation order.
On June 17, 1999, after a hearing on Mr. Mimms’ rule for contempt and motion for change in custody and other ancillary matters, the parties entered into another consent judgment whereby they agreed that Ms. Brown would continue to be the domiciliary parent. This consent judgment also stipulated that Ms. Brown was in contempt of court for failure to follow previous visitation orders, and would receive a thirty day sentence that was suspended on the condition that she fulfill certain obligations within specified time frames. These conditions included payment of certain fines and costs, attendance at a co-parenting class and the posting of a bond to ensure future compliance with the court’s orders. The judgment set forth a visitation schedule whereby Mr. Mimms has the minor child every other weekend, alternating holidays and extended time during the summer.
On December 10, 1999, Mr. Mimms filed another motion for contempt against Ms. Brown, alleging that she did not comply with the conditions set forth in the June 17, 1999 judgment, and that she continued to disobey the visitation orders of the court. On February 2, 2000, the trial court rendered judgment finding Ms. Brown in contempt of court for failure to follow previous orders of the court, and ordered that an attachment issue and that Ms. Brown be jailed for thirty days or until posting a cash bond in the amount of $3,500.00. The court transferred interim domiciliary custody of the minor child to Mr. Mimms pending a hearing to deter *40 mine custody. The court appointed Leslye Hunter, L.P.C. to evaluate the | ^parties to aid in the court’s determination of domiciliary custody and visitation rights.
On October 31, 2000, the trial court signed a judgment rendered in open court on May 3, 2000 naming Ms. Brown as the domiciliary parent of the minor child. In this judgment, Mr. Mimms’ visitation rights were expanded to include visitation with the minor child from Tuesday afternoon after school until Thursday morning when the child is returned to school. Mr. Mimms was also granted visitation with the child every other weekend, and each party was granted two weeks of uninterrupted visitation with the child during the summer. Ms. Brown was found in contempt of court, and ordered to pay attorney’s fees of $1,565.00 and to post a surety bond in the amount of $1,000.00. On February 2, 2001, the trial court reiterated the previous visitation schedule set forth in the October 31, 2000 judgment, and added other details relevant to the implementation of the visitation schedule. The court reiterated its earlier appointment of Leslye Hunter as custody evaluator and ordered the parties to undergo evaluation by Ms. Hunter.
On May 31, 2002, the trial court signed a judgment that is the subject of the instant appeal. In that judgment, the court again named Ms. Brown as the domiciliary parent of the minor child. Mr. Mimms was granted visitation with the child every other Thursday from the time he picks the child up from school until Monday morning when he returns the child to school. Mr. Mimms will also have summer visitation with the child each year starting on the day after school ends for summer vacation until July 17[th].
|fiMr. Mimms appeals the trial court’s judgment signed on May 31, 2002. The May 31, 2002 judgment was rendered following a hearing that occurred on March 7, 2001 and September 4-5, 2001.
At the hearing, the first witness was Ms. Peggy Rizzo, the secretary at St. Joseph Central School, which is attended by Darius, Jr. She brought the child’s school records, which were admitted into evidence. These records included, among other items, court orders regarding visitation, the visitor’s log, a list of the child’s absences and notes explaining absences from Ms. Brown and medical professionals.
The next witness was Mr. Mimms. He testified that Ms. Brown has habitually thwarted his court-ordered visitation with his son, and has also denied him almost all telephone access to his son. Mr. Mimms stated that after the court issued an interim order establishing an arrangement whereby either Ms. Brown was to transport the child to Mr. Mimms or Mr. Mimms was to pick the child up from school on his visitation dates, Ms. Brown responded by not transporting the child to Mr. Mimms or by withdrawing him from school early on those dates or not taking him to school at all. He produced a list of dates in which his son was absent from school, and suggested that the absences were efforts by Ms. Brown to thwart his visitation rights. He stated that he refused Ms. Brown’s requests that he pick up the child from her house after the interim court order was issued requiring Ms. Brown to transport the child to Mr. Mimms’ house or allowing Mr. Mimms to pick up the child from school. He explained that his lawyer instructed him not to ^deviate from that order, because prior to the rendition of that order, he would go to Ms. Brown’s house to pick up the child and she would refuse to allow the child to go with him unless he presented her with a child support check at that time.
Mr. Mimms testified that his reason for asking that domiciliary custody be trans *41 ferred to him is because he understands the importance of a mother and father in his child’s life, but the child’s mother does not feel the same way. He further stated that as an alternative to his request to be named domiciliary parent, he is asking for reasonable visitation without interference from the mother.
On cross-examination, Mr. Mimms admitted that he has not always paid his child support in accordance with the terms of the court orders. He said he does not pay any of his son’s school tuition, and acknowledged that at times his son was not allowed to attend school because of non-payment of tuition.[2] Mr. Mimms denied that his son has chronic asthma, and said he does not know about his son’s medical problems because Ms. Brown does not keep him informed. He said his son has needed medical attention while in his care only one time for ringworm on his head.
Mr. Mimms’ mother, Viola Mimms, testified that she has observed many of her son’s visits with her grandson. She said her grandson enjoys being with his father. She said she has not seen her grandson seriously ill, except for one time when he was hospitalized for asthma problems. She knew that her grandson was on asthma medication.
|RMs. Brown’s sister, Chandra Brown, testified that she lives with Ms. Brown and her son. She stated that Darius, Jr. has chronic asthma and has had surgery twice for chronic ear infections. She testified that the child’s absences from school have mostly been due to illness, but some absences were due to non-payment of tuition. Ms. Chandra Brown stated that her sister has not tried to interfere with Mr. Mimms’ visitation with his son, but said that her sister sometimes does not have a method of transportation to deliver the child to the father.
Ms. Brown’s mother, Eloise Brown, was the next witness. She essentially corroborated her daughter, Chandra Brown’s testimony regarding Darius, Jr.’s health problems and the child’s mother’s problems with transportation. She also denied that Phaedra Brown has ever interfered with Mr. Mimms’ visitation with his son. Ms. Brown’s friend, Consuela Colton, also testified that Ms. Brown never interfered with Mr. Mimms’ visitation.
The next witness was Morris F.X. Jeff, Jr., a licensed social worker who was accepted by the court as an expert in family counseling. He testified that he had one meeting with Ms. Brown and her son the day before trial, and he admitted that he has never met Mr. Mimms. Based on his observations, he stated that he thought it would be devastating to the child if his mother were no longer his primary caretaker. He admitted that he usually favors the mother in child custody disputes. His opinion is that a situation in which custody between the parents is alternated every seven days is not stabilizing to the child. He stated that he believes that in |amost eases, the best situation is for the mother to have domiciliary custody, with the father having “enormous” amounts of visitation.
The final witness was Ms. Phaedra Brown. She testified that she has never attempted to prevent or frustrate Mr. Mimms’ visitation with their son. She said she has had difficulty in coordinating visitation because of transportation problems. She said she has asked Mr. Mimms to pick up their child at her house but he always *42 refuses. She said her son has missed a lot of school for illnesses, including asthma problems, and surgeries for ear problems. She obtained notes from her son’s doctor for many of those illnesses, and those notes were introduced into evidence. Ms. Brown testified that she believes Mr. Mimms does not always treat their son’s medical conditions properly. She said Mr. Mimms tells her that the child is not sick when he is in his care. She stated that some of the child’s school absences have been due to non-payment of tuition.
Ms. Brown testified that she believes she should continue to be the domiciliary parent because she has been the child’s primary caretaker since his birth. She vowed to cooperate with Mr. Mimms in rearing their child together if the court awarded joint custody, and named her the domiciliary parent. She requested that the court order Mr. Mimms to provide transportation for his son’s visits.
On cross-examination, Ms. Brown admitted to being found in contempt of court on several occasions for non-compliance with Mr. Mimms’ court-ordered visitation, but she claims she was not properly served with notice of the contempt 110proceedings. She admitted that Mr. Mimms has missed visitation time with his son, but said it was because of his refusal to pick up his son at her house. She agreed that one of the earlier judgments in this case stated that if the child is not picked up at school by Mr. Mimms, then Ms. Brown is to transport the child to Mr. Mimms’ house. She stated that her opinion is that the visitation schedule in which the child stays with his father every other weekend and every Tuesday afternoon until Thursday morning is disruptive to the child.
On appeal, Mr. Mimms argues that the trial court erred in continuing domiciliary custody with Ms. Brown, arguing that her continued non-compliance with Mr. Mimms’ visitation is not in the child’s best interest. He also argues that Ms. Brown is jeopardizing her son’s education based on his allegation that she is keeping the child out of school in order to thwart Mr. Mimms’ ability to exercise his visitation rights. In Evans v. Lungrin, 1997-0541, p. 12-13 (La.2/6/98), 708 So.2d 731, 738 (emphasis in the original), our Supreme Court set forth the burden of proof for the modification of a custody judgment as follows:
[T]he paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131. However, in actions to change custody decisions rendered in considered decrees, an additional jurisprudential requirement is imposed. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95); 653 So.2d 48, writ denied, 95-1488 (La.9/22/95); 660 So.2d 478. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Hensgens, 653 So.2d at 52. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is “so deleterious to the child as to justify In a modification of the custody decree,” or of proving by “clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.” Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986), reh’g denied (Sept. 11, 1986).
However, in cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy *43 burden of proof enunciated in Bergeron is inapplicable. Hensgens, 658 So.2d at 52. Instead, where the original custody decree is a stipulated judgment, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Hensgens, 653 So.2d at 52.
In the instant case, the original custody decree was a stipulated judgment because the parties consented to the custodial arrangement and no evidence of parental fitness was taken. Therefore, the “material change of circumstances” and “best interest of the child” burden of proof applies, and not the heavy burden of proof enunciated in Bergeron.
A trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Mire v. Mire, 1998-1614 (La.App. 4 Cir. 3/24/99), 734 So.2d 751. While Mr. Mimms presented evidence showing that the minor child had a large number of absences from school, Ms. Brown presented evidence showing that many of these absences were due to illness or non-payment of tuition. The trial court apparently rejected Mr. Mimms’ contention that the sole purpose of the minor child’s absences from school was for Ms. Brown to prevent Mr. Mimms from exercising his right to visitation.
| ^Furthermore, in oral reasons for judgment after the hearing, the trial court noted Ms. Brown’s contempt citations for non-compliance with Mr. Mimms’ court-ordered visitation, and advised her in strong terms that future non-compliance with court orders would not be tolerated by the court. The trial court also expressed disappointment with both parents for allowing their negative feelings for one another to interfere with their obligation to work together for the benefit of their child. However, the trial court apparently accepted Ms. Brown’s testimony that she would cooperate with Mr. Mimms in the future, and did not find that her previous non-compliance with court orders constituted a material change in circumstances. We find that the trial court did not abuse its discretion in continuing Ms. Brown’s designation as the domiciliary parent because Mr. Mimms did not satisfy his burden of proving that there has been a material change in circumstances.
In his second argument, Mr. Mimms states that the trial court erred in not admitting the evaluation report of Les-lye Hunter, LCSW, into evidence in lieu of her live testimony. Mr. Mimms points out that the trial court appointed Ms. Hunter to evaluate the parties to aid the court in determining custody. According to Mr. Mimms, Ms. Hunter evaluated the parties and submitted her report to the court in September 2000. Earlier trial dates on which Ms. Hunter was available to testify were continued. Counsel for Mr. Mimms states in his brief that on August 21, 2001, Judge Piper Griffin indicated to the parties that because Ms. Hunter was the court-appointed evaluator, any party that objected to her findings had to subpoena and pay for Ms. Hunter’s appearance at trial. Counsel for Mr. Mimms stated at the September 4-5, 2001 hearing that she relied on that instruction from Judge Griffin, |13and did not subpoena Ms. Hunter to testify because Mr. Mimms did not object to Ms. Hunter’s findings and wanted the report to be admitted into evidence.
The record on appeal does not include a transcript of the August 21, 2001 hearing. La. R.S. 9:331(B) states:
The court may order a party or the child to submit to and cooperate in the *44 evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.
It is undisputed that Leslye Hunter’s testimony was not offered at the March 7, 2001/September 4-5, 2001 hearing. Ms. Brown objected to the admission of Ms. Hunter’s report as inadmissible hearsay. The trial court did not allow the report into evidence.
Even though Ms. Hunter was the court-appointed mental health professional, La. R.S. 9:331(B) entitled Ms. Brown to cross-examine her in court. Due to Ms. Hunter’s unavailability at trial, Ms. Brown was unable to exercise her right to cross-examination, and the report was properly disallowed.
Mr. Mimms’ next argument is that the trial court erred in not making executory previous sentences of jail time for Ms. Brown’s contempt citations for non-compliance with Mr. Mimms’ visitation. He argues that on three different occasions, the trial court suspended Ms. Brown’s jail sentences pending any further contempt citations for non-compliance. He contends that Ms. Brown’s subsequent contempt citations should have revoked the suspension of her sentence of jail time on previous contempt citations.
I uThe willful disobedience of a lawful judgment constitutes constructive contempt of court. La. C.C.P. art. 224(2). La. C.C.P. art. 227 states that the punishment for contempt is set forth in La. R.S. 13:4611, which provides in pertinent part:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
(d) For any other contempt of court, including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
After reviewing the record, we find that the trial court did not abuse its discretion in not making executory previous sentences of jail time for Ms. Brown’s contempt citations.[3]
In his next argument, Mr. Mimms contends that the trial court erred in not seizing the bond on deposit in the registry of the court to ensure Ms. Brown’s future compliance with court orders. This decision was also clearly within the discretion of the trial court, and we find no abuse of that discretion.
Finally, Mr. Mimms argues that the trial court erred in decreasing his visitation time, when Ms. Brown did not file formal pleadings asking that Mr. Mimms’ visitation time be decreased. Since the original consent judgment in this case was rendered, the visitation schedule has been modified several times by the trial court in interim judgments. None of these judgments were considered | ir,decrees; therefore, in reviewing the modification to the visitation schedule set forth in the May 31, 2002 judgment currently on appeal, we must determine whether there was a “material change of circumstances” necessitating this modification and whether the mod *45 ification was in the “best interest of the child.”
While it is true that the issue of modifying the visitation schedule was not included in formal pleadings filed by either party, the testimony offered on this subject at the March 7, 2001/September 4-5, 2001 hearing enlarged the pleadings to allow modification of the visitation schedule. In Mr. Mimms’ own testimony, he stated that he was requesting a reasonable visitation schedule as an alternative to his request to be named the domiciliary parent. Furthermore, Ms. Brown testified, without objection, that the visitation schedule in effect following the judgment rendered in open court on May 3, 2000 and signed on October 31, 2000 was disruptive to her son.
Under that schedule, Mr. Mimms had visitation with his son every other weekend from Friday afternoon to Sunday afternoon, every week from Tuesday afternoon to Thursday morning, and two weeks in the summer. Under the new schedule set forth in the May 31, 2002 judgment, Mr. Mimms has his son every other weekend from Thursday afternoon until Monday morning, and one-half of the summer. Although the new schedule eliminates the middle of the week overnight visits, it expands his bi-weekly weekend visits from two nights to four nights and expands the amount of time that Mr. Mimms’ son will stay with him in the summer. The trial court stated that it was necessary in this case to establish a different schedule where the visitation periods were longer and uninterrupted.
The trial court apparently accepted Ms. Brown’s testimony that the visitation schedule in effect following the judgment rendered in open court on May 3, 2000 |1fiand signed on October 31, 2000 was disruptive to the minor child. The trial court is in the best position to evaluate the credibility of the witnesses, and we find that its evaluations were reasonable.
We find that the disruption to the child’s life caused by the previous visitation schedule is a material change in circumstances warranting the modification of the visitation schedule. We also find that the modified schedule is in the best interest of the child. The trial court did not abuse its discretion in modifying the visitation schedule.
For the reasons stated above, we affirm the trial court judgment.
AFFIRMED.

. Only Mr. Mimms appealed the trial court judgment of May 31, 2002. Child support is not an issue in the instant appeal, so the procedural history of this case will not include references to child support.

. It is noted that none of the judgments rendered in this case prior to May 31, 2002 ordered Mr. Mimms to pay school tuition.

. Neither party should interpret this ruling as condoning non-compliance with court orders, either past or future.