# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 07-191

MELISSA ANN WHITTINGTON
(FORMERLY STRACENER)

VERSUS

CHESTER STRACENER

**************
APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, DOCKET NO. C-95-0789
HONORABLE STUART S. KAY, JR., DISTRICT JUDGE

**************
SYLVIA R. COOKS
JUDGE
**************

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and James T. Genovese, Judges.

**AFFIRMED.**

**David L. Wallace**
**Attorney at Law**
**518 North Pine Street**
**P.O. Box 489**
**DeRidder, Louisiana 70634**
**(337) 462-0473**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Melissa Ann Whittington**

**Martha Ann O'Neal**
**O'Neal and Leavoy**
**125 North Washington Street**
**P.O. Box 1055**
**DeRidder, Louisiana 70634**
**(337) 462-6051**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Chester Stracener**

**COOKS, Judge.**

## STATEMENT OF THE CASE

Melissa Ann Whittington appeals the judgment of the trial court granting domiciliary custody of her two minor sons to their father, Chester Stracener. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

Melissa and Chester Stracener were married for fourteen years and are the parents of four children, two of whom, Joseph (age 13) and Dustin (age 11) are still minors. At the time of the divorce, a consent judgment was entered granting the parties joint custody and naming Melissa as the domiciliary parent. Chester was granted visitation on alternating weekends, holidays and summer vacations. Both parents lived in the DeRidder area and even after being transferred to Texas by his employer, Chester continued weekend visitation with his children. In April 2005, Chester's employer, Nabors Drilling USA, transferred him to Junction, Colorado. The two minor children visited him at his new home over the summer and currently his older son resides in Colorado.

In August 2005, Chester learned Melissa and her husband, Marlin Whittington, had been arrested on charges of possession of methamphetamine. Drug paraphernalia was found in the family home and drugs were found in Marlin's truck. Chester became concerned for the well-being and safety of the two minor children, and filed a rule for a change in domiciliary custody. At the time, Dustin, by verbal agreement, had been living with his father and attending school in Colorado. A hearing on the rule was held on August 10, 2006. The trial court found the arrest of Melissa, and her husband, was a material change in circumstances and based on the evidence presented, it was in the best interest of Joseph and Dustin to award domiciliary custody to Chester. The trial court stated:

2

> If the Court leaves custody with the primary care giver in this case, it will be electing to leave the children in an environment that the Court believes quite possibly involves drugs and would expose the children to drugs.
>
> . . . .
>
> [T]his Court concludes on the basis of the evidence presented that the apparent drug use in the home where the children would reside amounts to a compelling reason. The award of custody will be joint to the mom and dad with the father as domiciliary custodian.

Melissa appeals the decision of the trial court. We affirm.

## LAW AND DISCUSSION

It is well established a "trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses" and its "determination . . . will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied,* 96-1650 (La. 10/25/96), 681 So.2d 365. When "the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in *Bergeron* [*v. Bergeron,* 492 So.2d 1193 (La. 1986)] is inapplicable." *Hensgens v. Hensgens*, 94-1200, pp. 5-6 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478.

In this case, the original joint custody agreement between Melissa and Chester was a consent decree, not a considered decree. In order to change domiciliary custody, Chester bears the burden of proving: (1) a change in circumstances affecting the welfare of the children has occurred since the original decree; and (2) the proposed modification is in the best interest of the children. *Hensgens v. Hensgens*, 94-1200, (La.App. 3 Cir.), 653 So.2d 48, *writ denied*, 95-1488 (La. 9/22/95), 660 So.2d 478.

In support of his position, Chester presented the testimony of Lieutenant Craig Richard with the DeRidder Police Department, Narcotics Task Force. Lieutenant

Richard testified he searched the home of Melissa and Marlin Whittington pursuant to an arrest. He stated Marlin was involved in a traffic stop where a large quantity of methamphetamine was found in his truck. In the home, he found a smoking pipe, a spoon with residue, two sets of scales and multiple bottles of butane lighter fuel. He explained the significance of the seized items: "We have in the past when we've seen a lot – with the methamphetamine use – they use that for the torches and the small torches and butane lighter to produce high heat to melt the product for use as injections or to melt it down in a spoon or other metal substance." Melissa admitted "methamphetamine use in the past; but she was not hot at that time." When asked for a urine sample, Melissa refused to produce one and "admitted to dipping the toilet water and not providing a sample." Officer James Lawrence Halbert, a narcotics investigator with the DeRidder Police Department, testified he received a report Marlin was selling methamphetamine out of his home and both Marlin and Melissa were users.

Significantly, the two major children of Melissa testified against their mother. Joshua stated he has seen his mother and step-father use drugs when the two younger children were present in the house. He has, in fact, used drugs with his mother and has witnessed her use crystal meth recently. He testified his mother cannot control Joseph. He is thirteen years old, always in trouble, and does poorly in school. "He's just bad. I mean, there is no way around it. He misses school. I mean, he is just always getting into trouble." Although, Joshua is currently on probation, he is living in Colorado near his father and is employed by Patterson Drilling. Joshua testified his father's home would provide a more stable, structured environment for Joseph. Left to his mother's care, Joshua believes Joseph is "probably going to end up like [he] . . .did," not finishing school and getting arrested.

Samantha Stracener, Melissa's oldest child, believes her mother can no longer

control Joseph and he would benefit by living with Chester. She stated: "[M]y momma has done everything she can for him, and I think daddy needs to try."

The testimony indicates Joseph was enrolled at DeRidder Junior High. He was not attending school on a regular basis, was failing four subjects and received six in school suspensions for conduct. As a result of his continued absences and his poor grades, Joseph was retained in the seventh grade. He did not go to summer school. At one point, Melissa removed him from school and was attempting to home-school him. When she received the petition for a change in custody, she re-enrolled him in South Beauregard High School. There was no improvement in his behavior or his attendance. Marlin Harold Ramsey, the principal at South Beauregard High School testified that in a three month period Joseph missed fourteen days of school. The trial court found: "The school record of Joseph is terrible and it is a negative factor for the mom's continued custody. She allowed Joseph to miss much to much school without cause."

Chester testified he received calls from Samantha and from Melissa's sister. They both believed Melissa was taking drugs. He then saw the arrest report in the *Beauregard News*. Chester is employed by Nabors Drilling USA in Colorado as a drilling superintendent. He works regular hours and is called out at night a few times a month. His wife is a nurse. Chester feels Joseph may need counseling to get him back on track. Dustin had been living with him, attending school and doing very well.

When questioned regarding her arrest and suspected drug use, Melissa chose to exercise her Fifth Amendment rights. She admits Joseph does have problems at school and he is hard to control. Dustin has always done very well in school and is not a discipline problem. Melissa does not want to lose domiciliary custody of her boys. She testified: "I have raised my kids primarily myself for the past ten years."

5

The testimony of the police officers, Melissa's two adult children, and Melissa's suspected drug use and arrest on charges of possession of methamphetamine all support the trial court's finding that a material change in circumstances occurred in this case and reassessment of domiciliary placement of the minor children in the mother's home was warranted. We are also satisfied this evidence coupled with Joseph's behavioral problems and his poor school record, supports the trial court's decision to designate Chester as the domiciliary parent of the boys. The trial court apparently concluded Chester's home will provide a more stable and structured environment for both boys giving them a chance to become educated and productive individuals. Accordingly, we affirm the decision of the trial court.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to Melissa Ann Whittington.

**AFFIRMED.**