STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-845

CHARLES C. BODIE

VERSUS

TAMMY R. HARVEY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 68,845
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

GLENN B. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

**REVERSED AND RENDERED.**

V. Ross Cicardo
Cicardo Law Firm
P. O. Box 3565
Lafayette, LA 70502
(337) 268-9511
Counsel for Plaintiff/Appellant:
    Charles C. Bodie

John K. (Mike) Anderson
101 South First St.
Leesville, LA 71446
(337) 239-9076
Counsel for Defendant/Appellee:
    Tammy R. Harvey

GREMILLION, Judge.

The plaintiff, Charles C. Bodie, appeals the trial court's judgment awarding joint custody, but naming the defendant, Tammy R. Harvey, the primary domiciliary parent. For the following reasons, we reverse and render.

### PROCEDURAL AND FACTUAL BACKGROUND

Bodie and Harvey were never married, but had one son, Wesley, who was born in 1999. Bodie filed a petition for custody in April 2002, urging that Harvey's lifestyle was unstable and that it was in the best interests of Wesley that he be awarded sole custody. In an August 2002 judgment, the trial court ordered that Bodie and Harvey would have joint custody of Wesley. That judgment set forth the visitation (alternating weekly) and holiday schedules and set forth that "neither party shall have members of the opposite sex overnight nor as paramours."

In February 2004, Bodie filed a rule for contempt, attorney fees, custody and joint custody implementation plan urging that he be named the primary domiciliary parent because Harvey was residing in the home of her boyfriend. In an answer and reconventional demand, Harvey claimed that Bodie was fully aware that after she and Bodie stopped living together in November 2003, she began living with her boyfriend, Tommy Bolton, in January 2004.[1] In her answer and reconventional demand, Harvey urged that a change of circumstances warranted that she be designated the domiciliary custodial parent.

Following a hearing on the rule to modify a consent decree in August 2005, the trial court found that there had been a change in circumstances since the

---

[1] Harvey and Bolton were married in May 2004, however, we will refer to Tammy as Harvey throughout this opinion.

August 2002 judgment, primarily relating to Wesley's social and educational delays which the trial court attributed to "inconsistent and divergent parenting approaches" used by Bodie and Harvey. The trial court then considered the factors enumerated in La.Civ.Code art. 134 and found that it would be in Wesley's best interest if joint custody was awarded with Harvey being named the primary domiciliary parent with visitation by Bodie on alternate weekends and holidays which coincide with the schedule of Wesley's half-brother, Race. A judgment was rendered in December 2005, which also found Harvey in contempt of court for residing in open concubinage with a paramour while she had custody of Wesley, but that her subsequent marriage purged herself of any continuing contempt. She was ordered to pay Bodie $1,000 in attorney's fees. Bodie now appeals.

**ISSUES**

Bodie assigns as error the trial court's failure to designate him primary domiciliary custodial parent and the trial court's changing the existing equally shared custody order to alternating weekends and holidays conditional on a visitation schedule of a half-brother, which is not part of the record.

**DISCUSSION**

The law is well settled that the trial court's finding with regard to custody matters is entitled to great weight on appeal as it is in a superior position to assess what the child's best interests are based on its consideration of the testimony of the parties and witnesses. *AEB v. JBE,* 99-2668 (La. 11/30/99), 752 So.2d 756; *Miller v. Miller*, 01-356 (La.App. 3 Cir. 10/31/01), 799 So.2d 753. Therefore, upon review, the findings of the trial court in custody matters are afforded great weight and

2

the trial court's determination will not be disturbed absent a showing of abuse of discretion. *Thibodeaux v. Thibodeaux*, 00-82 (La.App. 3 Cir. 6/1/00), 768 So.2d 85, *writ denied*, 00-2001 (La. 7/26/00), 766 So.2d 85.

In all child custody cases, the primary consideration is the best interests of the children. La.Civ.Code art. 131. Numerous factors are at the trial court's disposal in making this determination and are set forth in La.Civ.Code art. 134. They include:

(1) The love, affection and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

3

(12) The responsibility for the care and rearing of the child previously exercised by each part.

However, the trial court is not limited to considering the factors enunciated and should consider the totality of the facts and circumstances in each particular situation. *Hawthorne v. Hawthorne*, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

Because the parties stipulated to an agreement without the court considering parental fitness, the movant had to prove, in order to modify the existing custody arrangement, that 1) a material change in circumstances had occurred, and 2) that the new custody arrangement would be in the best interest of the child. *See Lincecum v. Lincecum*, 02-1522 (La.App. 3 Cir. 3/6/02), 812 So.2d 795.

## EVIDENCE

Bodie's central argument rests on the question of the moral fitness of Harvey because she had lived with Bolton in open concubinage. It is an interesting argument to make considering that Bodie did the very same thing with her for multiple years. Bodie further complained that Harvey refused reasonable requests for visitation at times when Wesley was not in his custody, and that Harvey refused to allow telephone communication between him and his son.

Harvey testified that she and Bolton cohabitated before marriage while she and Bodie were doing the week at a time custody arrangement in direct contravention of the court's orders. She further testified that she is thirty-four years old and has been married five times including the marriage to Bolton. She testified that she has two other sons from previous relationships.

Harvey then discussed some of the problems Wesley is having in school. She stated that she and Bodie jointly agreed that Wesley should repeat kindergarten. Harvey stated that she signed Wesley up to play baseball because he expressed a

4

desire to play, but that she did not ask Bodie if he approved. She testified that she does not work and that she and Bolton live in a three-bedroom house. Harvey admitted that she and Bodie have had problems communicating regarding raising Wesley. She stated that they do not agree in the area of education and discipline. Harvey testified that she did not feel that Wesley was progressing in school because he has no stability or consistency with the back and forth schedule. She stated that both she and Bodie are close enough to Wesley's elementary school to get him back and forth. Harvey testified that Bodie does not discipline Wesley at all–she stated that he gets his way and receives anything that he asks for. She further stated that she does not approve of Bodie allowing Wesley to ride big tractors and four-wheelers by himself and allowing him to ride in Bodie's work vehicle, a Tom's delivery truck, unrestrained. However, she admitted to allowing Wesley to ride in a vehicle unrestrained because he would scream and cry. She further testified that she did not approve of Wesley sleeping in the same bed with Bodie or the fact that Bodie takes Wesley to doctors other than his regular pediatrician. She further stated that she and Bodie essentially disagree on every manner of parenting Wesley and that they have since he was born.

Rebecca Dyer, an expert licensed clinical social worker, testified that she was ordered by the court to meet with Bodie, Harvey, and Wesley. She stated that she met with all three of them on March 15, 2005, with Bodie and Wesley on March 29, Harvey and Wesley on April 5, and Bodie and Wesley on April 12, before submitting her May 20, 2005 report to the court. She testified that Wesley has speech and language problems. She stated that Harvey is the more structured parent while Bodie the more relaxed one. She testified that Harvey would correct her son's language errors and insist that he use proper manners. She said that Wesley showed affection

5

toward both parents.

Dyer stated that the benefits of living in the Bolton home were a more family-oriented atmosphere. She testified that Wesley had a very close relationship with his half-brother and that he talked about him often. On the other hand, in his father's home, Wesley has a very close relationship with his paternal grandmother and is able to receive more one on one attention. He also has friends that reside near his father's home.

Dyer futher testified that she found no deleterious effects due to the week-to-week arrangement that had been in place. She stated that she felt a change would be detrimental to Wesley because he is close to both parents and it would be difficult for him to make the changes. She said that it would be in his best interest to maintain the week-to-week arrangement.

Dyer futher testified that Bodie was lacking in some parenting skills, but that she had worked with him in that regard and that he had progressed. She further testified that she spoke to Wesley's teacher who stated that there was no difference in behavior or academic performance from week to week. She again stated that she felt the risk of a detrimental effect to Wesley was greater if the present situation was changed as opposed to maintaining the current week-to-week arrangement.

On cross-examination, Dyer testified that Harvey had been aware of Wesley's academic problems and tried to enroll him in Head-Start and other programs as early as three years old, but that Bodie refused. She said that Harvey told her that Bodie wanted him to be home schooled. She further testified that Bodie admitted to not properly restraining Wesley and allowing him to ride the four-wheeler by himself. However, she said that he understood that he must be restrained and supervised. She further identified his weaknesses as problems setting limits with Wesley and over-

6

indulging him.

Bodie testified that he and Harvey have had a long history of poor communication regarding Wesley. He stated that she never informed him of anything relating to Wesley's medical care or education. However, he said that things have improved since early 2004, when he filed the rule. Bodie further testified that he has since become very involved in Wesley's education and his IEP meetings at the school. Bodie further testified that he enrolled Wesley in a program at Sylvan Learning Centers to assist him with his academic delays. He stated that Wesley goes to Sylvan on Tuesdays and Thursdays when he has Wesley for the week.

Introduced into evidence were several letters sent certified mail that Bodie has written to Harvey regarding assisting Wesley with his education and a request that he be allowed to attend a birthday party, but Bodie stated that Harvey refused to let him go and offered no reason why. Also offered into evidence was a complaint filed by Bodie with the Vernon Parish Sheriff Department because Harvey was supposed to meet him at the Sheriff's office to exchange custody of Wesley on Christmas day as ordered by the court, but she did not show up.

Bodie further testified that the weeks he has Wesley he brings him to and from school. He stated that he lives five or six miles from Harvey's house and about ten minutes from the school. On cross-examination, Bodie admitted that he engaged in just what he is now complaining of—that is living with Harvey while they were not married when court orders by the father of Harvey's other child prohibited it.

On cross-examination, Bodie admitted allowing Wesley to ride in the front seat unbelted and that he was in a car accident. He also admitted allowing Wesley to ride the four-wheeler buy himself. However, he stated he no longer allows Wesley to ride in his Tom's delivery truck and that he has never ridden the tractor by

7

himself. Bodie further testified that he has learned from his counseling sessions with Dyer that he must communicate with Harvey and put aside any past negative feelings, and has improved his parenting skills by not indulging him and disciplining him when he misbehaves. He also admitted that Wesley has a very close relationship with his half-brother, Race. There was extensive discussion in Bodie's testimony as to which particular details of various aspects of Wesley's life, i.e. doctor's appointments, school-related activities, he was kept informed of as well as letters sent by both Harvey and Bodie and whether or not Harvey discussed things with Bodie before enrolling Wesley in various activities.

Vera Wellman testified that she taught Wesley last year and has taught both of Harvey's other children and knew Harvey, but that she did not know Bodie until Wesley starting attending Hicks school. She testified that during the school year of 2004, when the week-to-week schedule was being followed, Wesley performed consistently regardless of where he spent the week. However, she stated that Harvey participated consistently in his education while Bodie did not. However, she also testified that Bodie was very "energetic" and "interested" in Wesley's schooling. She further stated that she felt both parents only wanted the best for Wesley.

Barbara Kyle, a speech pathologist, testified that Wesley was her student. She stated that she would send homework home and that when Wesley was with his dad, he did not return the homework, but that he did when he was with his mom. However, she testified that she took no actions to determine why the homework was not being done such as writing a letter or calling Bodie. She further stated that these assignments were informal handwritten assignments to assist in therapy. She did not know if Bodie did the assignments, but just failed to return the paper. She further testified that she sometimes noticed some regression in his speech skills during the

8

weeks that Wesley spent with his father.

Tommy Bolton testified that Bodie knew Harvey was living with him prior to them getting married. He testified that Harvey is "tight" with her son and that on a daily basis she corrects his speech problems and assists him with his homework. He stated that when Wesley returned from being with his father, his speech problems would worsen and that he was "uncontrollable." He further testified that his wife does not work and is available twenty-four hours a day to care for Wesley. He admitted, however, that Wesley loves and has a close relationship with both his mother and father.

In its written reasons for judgment, the trial court found that there had been a change in circumstances since the August 30, 2002 judgment "resulting from Wesley's significant delays in communication and social skills which, according to Dr. Lonowski, is attributed *in part to inconsistent and divergent parenting approaches utilized by his mother and father.*" Dr. Lonowski, a clinical psychologist, submitted a report to the court which was received into evidence. In its written reasons for judgment, the trial court quoted a large portion of the report, which concluded:

> In conclusion, the examiner has some significant concerns about dependency issues in Mr. Bodie's relationship with his son which call into question his ability to be a fulltime nurturing and supportive parent who meets the needs of a young child. There were indications from Mr. Bodie's statements that he may be eschewing adult social relationships where he has difficulties with trust and commitment, and is devoting himself excessively to his son in a way that does not encourage Wesley's self-sufficiency, independence and emotional growth.

In considering the factors enumerated in Article 134, the trial court stated that it found the love and emotional ties to be equal, that the length of time in an adequate environment was not a factor, and additionally:

9

The permanence of the family unit has not been a factor in the past, but it does appear to be a factor in considering the best interest of the child in that Wesley and his next oldest half-sibling, Race, have developed a close and bonding relationship.

Moral fitness of the parties is a consideration for the court given Tammy Bolton's propensity to openly live with men to whom she is not married.

Both parties seem to be mentally and physically able to care for Wesley. However, Dr. Lonowski has significant concerns about dependency issues in Mr. Bodie's relationship with Wesley.

Home, school, community history and preference of the child are not relevant factors as both parents are doing what they perceive they can do to best help Wesley with his developmental problems.

The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party is a factor to consider in that the testimony revealed that these parties have difficulty in communicating with each other. On one hand, Mr. Bodie has problems communicating with Tammy, the school teachers and Wesley's coaches. On the other hand, when questioned about communication problems, the Court was impressed with Mr. Bolton's frankness when he attributed this in part to Tammy's stubbornness.

The distance between the parties and the care previously exercised by each party are not relevant factors.

Considering all of the evidence and the law, the Court finds that it is in the best interest of Wesley that joint custody be awarded to the parties, with his mother, Tammy Bolton. Being designated as the primary domiciliary parent and visitation with his father, Charles Bodie, on alternate weekends and holiday which coincide with the schedule Wesley's brother, Race, enjoys with his father.

## DISCUSSION

Having reviewed all of the evidence, we are unable to find any evidence in the record that a material change in circumstances occurred between the rendering of the August 30, 2002 judgment and this one. Accordingly, we find the trial court abused its discretion in changing the joint custody arrangement to make Harvey the primary domiciliary parent.

10

The trial court initially discusses that a material change of circumstances has led to the Wesley's educational delays. However, none of the factors in the discussion are directly related to his delays. Further, the evidence was overwhelming that the week-to-week arrangement did not affect his schooling. Both Dyer and Wesley's own teacher, Wellman, testified that there was no change in Wesley's academic performance during the week-to-week custody arrangement. We are unable to see how "inconsistent and divergent parenting approaches" led to Wesley's educational delays. Harvey herself testified that Wesley's problems exhibited themselves long before they separated. We find this indicative that Wesley's educational and speech problems were not the result of "parenting styles." Although it may be true that Bodie was somewhat in denial as to the extent of his son's educational delays, the evidence shows that he is now fully aware of these issues. Further, it appears that great strides have been made on the part of Bodie to improve his parenting skills and that he is making every effort to assist his son with his educational delays.

As to the remaining discussion, it is clear that Wesley and his half-brother Race have a close relationship that continued to flourish during the week-to-week arrangement. This has no bearing on Wesley's academic difficulties. What appears to be Harvey's co-dependence on men and Bodie's alleged co-dependence on his son, also had no bearing on Wesley's academic performance, which was described as generally lacking, regardless of whether he was at his mother's or father's house. Finally, it is clear from the record that communication between the parties has been strained, however, we find that Bodie has made the greater effort in putting aside past problems to facilitate a better relationship for the benefit of his son. In light of the fact that Bodie has an extremely close relationship with Wesley and is

11

clearly making every effort to assist him with his academic problems, we feel that it would not be in Wesley's best interest to limit his time with his father to four days per month. Harvey and Bodie must address his educational needs together.

Addressing Bodie's claims on appeal, we find his argument unpersuasive. Although it is clear that Harvey defied court orders, for which she was held in contempt, her previous cohabitation, though not favored by the law, was cured by her subsequent marriage and, in our opinion, has no bearing on the reasons the trial court cited as warranting a change in the custody arrangement. We further find that it would not be in Wesley's best interests if primary domiciliary custody were to be awarded to Bodie. As we have mentioned earlier, we find that the best interests of Wesley are served by reinstating the week-to-week custody arrangement which facilitates a close bond between Wesley and his mother and father.

## CONCLUSION

We find the trial court abused its discretion in modifying the joint custody award for the aforementioned reasons. Accordingly, the judgment of the trial court is reversed and the previous custody order of August 2002 is reinstated. Costs of this appeal are assessed equally between the parties.

**REVERSED AND RENDERED.**