NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-170

TODD BAUDIN

VERSUS

SHARMON BAUDIN PREVOST

**********
APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 96-3343-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********
ULYSSES GENE THIBODEAUX
CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Elizabeth A. Pickett, Judges.

Pickett, J., concurs.

REVERSED AND RENDERED.

Angelo J. Piazza, III
P. O. Box 429
Marksville, LA 71351
Telephone: (318) 253-6423
COUNSEL FOR:
    Plaintiff/Appellee - Todd Baudin


Kenneth A. Doggett
P. O. Box 13498
Alexandria, LA 71315-3498
Telephone: (318) 487-4251
COUNSEL FOR:
    Defendant/Appellant - Sharmon Baudin Prevost

**THIBODEAUX, Chief Judge.**

In this child custody case, Sharmon Baudin Prevost (Ms. Prevost), appeals the trial court judgment modifying a considered joint custody decree. The judgment appealed from awarded shared custody on a fifty-fifty (50/50) basis to each parent for seven (7) days each. The previous joint custody judgment awarded joint custody to Ms. Prevost and her ex-husband, Todd Baudin, appointed Ms. Prevost as the domiciliary parent, and granted visitation privileges to Mr. Baudin.

For the following reasons, we reverse the trial court's judgment.

I.

**ISSUES**

We shall determine whether:

1.  Ms. Prevost met the *Bergeron* standard to modify the considered joint custody decree to sole custody; and

2.  the trial court committed legal error in modifying the 1997 considered joint custody decree to 50/50 shared custody.

II.

**FACTS**

Ms. Prevost and Mr. Baudin were married on July 30, 1994. One girl, Karly Baudin, was born during the marriage on August 30, 1995. Ten months after the birth of Karly, the couple separated. Ms. Prevost subsequently filed for divorce and custody of Karly. In her petition, she requested temporary sole care, custody, and control of Karly, while the matter was scheduled for a hearing. The court granted Ms. Prevost's request.

Approximately two months after Ms. Prevost filed for divorce and custody of her minor child, she and Mr. Baudin reconciled. This reconciliation did

not last long; two months later, they separated again. After the latter separation, Mr. Baudin filed for divorce and custody of Karly.

The parties entered into a stipulated judgment that awarded joint custody to both parents, designating Ms. Prevost as the primary physical custodian, and Mr. Baudin having specific visitation privileges. In the meantime, Mr. Baudin's petition for divorce was granted. On August 15, 1997, a trial was held to rule on the issue of custody. This time, a considered decree was signed on September 11, 1997. The considered decree awarded joint custody to both parents, with Ms. Prevost being appointed as the primary physical custodian, and Mr. Baudin having specific visitation rights.

Throughout the years, the 1997 considered joint custody decree underwent various changes. For example, the parties once signed a consent judgment amending it and filed various rules for change of custody. These rules were premised upon changes in circumstances which, according to the parties, warranted changes in the 1997 custody arrangement.

On September 20, 2005, Mr. Baudin filed a rule to decrease child support. In response, Ms. Prevost alleged that a decrease in support was not warranted. Further, she petitioned for a modification in the considered joint custody decree to award her full care, custody, and control of Karly. In her response, Ms. Prevost stated, among other things, that Mr. Baudin had an anger problem and requested that he attend an anger management program as well as a parenting program. Ms. Prevost indicated she was fearful of Karly's exposure to Mr. Baudin's volatile and abusive temper.

In due course, this matter came before the trial court pursuant to regular assignment. After considering the evidence, law, and medical evaluations conducted

2

by Dr. John Simoneaux, the trial court ordered the parties to undergo independent medical examination by Dr. Raphael Salcedo. As a result of this, Mr. Baudin's visitation schedule was temporarily modified until the parties underwent medical examinations. In July of 2006, Dr. Salcedo evaluated Karly, Ms. Prevost, and Mr. Baudin.

Approximately a year later, Ms. Prevost filed a motion and order for re-evaluation of the parties by Dr. Salcedo in order to provide the trial court with an updated evaluation given that the last evaluation had taken place a year earlier. The trial court granted Ms. Prevost's request. However, despite the trial court order, Mr. Baudin refused to undergo re-evaluation and, for this reason, Dr. Salcedo elected not to re-evaluate Ms. Prevost. Thus, only Karly was re-evaluated.

In the interim, while Mr. Baudin was visiting with Karly, he noticed a bruise on her arm. According to him, Karly's arm needed medical attention. Consequently, he took her to the hospital. Upon Mr. Baudin's suspicion of physical and sexual abuse of Karly at the hands of Ms. Prevost, Mr. Baudin authorized a vaginal exploration exam upon Karly. However, neither physical nor sexual abuse was found to be inflicted upon Karly. Nonetheless, Mr. Baudin filed a Motion and Order for Ex-Parte Order of Child Custody requesting temporary sole custody of Karly until a hearing may be held. After considering Mr. Baudin's motion, the trial court issued an Interim Custody Order, awarding the parties 50/50 shared custody of Karly.

After this incident, Dr. Salcedo re-evaluated Karly. The results of Karly's re-evaluation "indicate[d] the presence of significant anxiety and depression, although clearly not as severe as when [he] examined her lastly, shortly after the traumatic medical examination which Mr. Baudin insisted she receive . . . ." During

3

the re-evaluation, Karly also informed Dr. Salcedo that "she still would very much prefer to return to the previous custody arrangement in which she was residing primarily with her mother as the domiciliary custodian, and visiting with her father on the weekends." As purportedly stated by Karly, "the current arrangement of alternating weeks makes her feel 'tired,' and she resents having to pack for what would essentially be an extended trip on a weekly basis." Upon concluding the re-evaluation of Karly, Dr. Salcedo recommended that the previous custodial arrangement, whereby Karly resided primarily with her mother and visited with her father on the weekends, be reinstated.

On October 22, 2007, a hearing was held to adjudicate Mr. Baudin's motion to decrease child support and to modify the 1997 considered joint decree, as well as to consider Ms. Prevost's response thereto, wherein she also prayed to the court for a modification to the 1997 considered decree. At the conclusion of the hearing, the trial judge held that a modification to the considered decree was justified and, accordingly, modified it to a 50/50 shared custody arrangement. As a result thereof, Ms. Prevost lodged this appeal.

On appeal, Ms. Prevost essentially argues that the trial court committed manifest error in modifying the 1997[1] considered joint custody decree.

---

[1]On Ms. Prevost's brief to this court, she incorrectly refers to the considered decree here at issue as the 1998 considered decree. The trial on the issue of custody was held on August 15, 1997, and on September 11, 1997, the considered decree was signed. Accordingly, this decree shall be referred to as the 1997 considered decree.

4

III.

## LAW AND DISCUSSION

**Standard of Review**

Ordinarily, a trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). More specifically, "a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Arrington v. Campbell*, 04-1649, p. 2 (La.App. 3 Cir. 3/9/05), 898 So.2d 611,612 (citing *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365).

> However, where one or more trial court legal errors interdict the fact finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*.

*Evans v. Lungrin*, 97-541, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735 (citations omitted).

Accordingly, we will conduct a *de novo* review of the record to determine whether the trial court was legally correct or legally incorrect in modifying the 1997 considered decree without taking the *Bergeron* criteria into consideration. Similarly, we will determine whether Ms. Prevost met her burden of proof under *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), warranting a change in the custody

5

agreement. *Citgo Petroleum Corp. v. Franz*, 03-88 (La.App. 3 Cir. 6/4/03), 847 So. 2d 734, *writ denied*, 03-1911 (La. 10/31/03), 857 So.2d 484.

A.

**Did Ms. Prevost meet the *Bergeron* criteria
to modify the considered joint custody
decree to sole custody?**

After a thorough reading of Ms. Prevost's brief, we are left to wonder whether she is challenging the Interim Custody Order issued by the trial court pursuant to La.Code Civ.P. art. 3945 or the 1997 considered joint custody decree. Therefore, we will address each possibility individually.

Louisiana Code of Civil Procedure Article 3945(C)(1) and (E) provides, in pertinent, that:

> **Art. 3945.   Incidental order of temporary child custody; injunctive relief; exceptions**
>
> . . . .
>
> C.  An ex parte order of temporary custody shall:
>
> (1) Expire by operation of law within fifteen days of signing the order; however, the order may be extended for good cause shown at any time before its expiration for one period not exceeding ten days.
>
> . . . .
>
> E.  Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void.

In this case, Mr. Baudin's Motion and Order for Ex-Parte Order of Child Custody was presented in chambers on August 21, 2006. On September 1, 2006, the trial court issued the Interim Custody Order. Pursuant to La.Code Civ.P. art. 3945 (C)(1), the Interim Custody Order remained in effect through September 15, 2006. The record does not reflect an extension of the order was requested. In light of this,

6

the Interim Custody Order expired, by operation of law, on September 16, 2006, thereby reverting Karly's custody arrangement back to the 1997 considered joint custody decree. Given this determination, we will next consider whether the trial court abused its discretion in finding that Ms. Prevost's request for custodial modification of the 1997 judgment was not warranted.

It is settled law that under Louisiana law, the paramount consideration in any determination of child custody is the best interest of the child. La.Civ.Code. art. 131. Nonetheless, this court, in *Gremillion v. Gremillion*, 07-492, p. 5 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228, 1232, stated:

> The burden of proof . . . is dependant on the nature of the underlying custody award. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child.

(Citation omitted).

> When the trial court has made a considered decree of permanent custody, the petitioning party bears the difficult burden of proving that the continuation of the present custody situation is so deleterious to the child that it justifies a modification of the custody arrangement, or of proving by clear and convincing evidence that any harm likely to be caused by the change of environment is substantially outweighed by the advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986).

*Lincecum v. Lincecum*, 01-1522, p. 3 (La.App. 3 Cir. 3/6/02), 812 So.2d 795, 797.

> However, in instances were the original custody decree is a [stipulated judgment], such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in *Bergeron* is inapplicable. *Hensgens*, 653 So.2d at 52. Instead, where the original custody decree is a [stipulated judgment], the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was

7

> entered, and (2) that the proposed modification is in the
> best interest of the child. *Hensgens*, 653 So.2d at 52.

*Mimms v. Brown*, 02-1681, p. 11 (La.App. 4 Cir. 9/3/03), 856 So.2d 36, 42-43.

Similarly, "[p]ursuant to the revised La.C.C art. 132, a substantially higher burden is now placed on the parent seeking sole custody—that of 'clear and convincing evidence.'" *Evans v. Lungrin*, 97-541, p. 8 (La. 2/6/98), 708 So.2d 731, 736.

In this case, the evidence contained in the record supports the finding that the 1997 judgment was, indeed, a considered decree. Notwithstanding Mr. Baudin's conclusory allegation that he "never actually received a true 'considered decree' until this latest version of the judgment[2] now on appeal," the record makes abundantly clear that, after a trial on the issue of custody was held on August 15, 1997, where testimony was heard, and the award was made pursuant thereto, the judgment rendered on September 11, 1997, was a considered decree. Furthermore, the 1997 judgment explicitly states that it is a considered decree and the judgment signed on November 8, 2007, references "the previous considered decree of August 15, 1997." It is well established that "[j]udgments are presumed to be correct. Moreover, upon questions of fact, the presumption is a presumption juris, not to be lightly overthrown by an appellate court." *Borie v. Lester & Co.*, 5 La.App. 536 (Orl.App. 1927). Accordingly, after concluding that the 1997 judgment was a considered decree, the burden of proof under *Bergeron* governs the modification of the 1997 judgment. After conducting a *de novo* review of the record, we conclude that Ms. Prevost failed to carry her burden of proof.

---

[2] Mr. Baudin is making reference to the considered decree signed by the trial court on November 8, 2007, modifying the previous considered decree of August 15, 1997.

On appeal, Ms. Prevost provides a list of facts which, according to her, overcome the *Bergeron* burden of proof. For instance, she argues, inter alia, that Mr. Baudin's late night weekend work schedule, his mental state of depression, his refusal to communicate with her, his attempt to interfere with Karly's extracurricular activities because she arranges them, his keeping the custody of Karly in constant contentious legal process as well as his decision to subject Karly to a vaginal examination provides ample evidence to warrant a modification of custody pursuant to the *Bergeron* standard. We disagree.

A reading of the record indicates clearly that the relationship between Ms. Prevost and Mr. Baudin is contentious and acrimonious. However, the record fails to show that Mr. Baudin has been neglectful or abusive of Karly. Certainly, Mr. Baudin has exhibited human frailties such as poor judgment, but it is our opinion that these flaws are neither egregious nor have created a situation where the continuation of the 1997 considered joint custody decree is so deleterious to Karly as to justify a modification of the said decree. Likewise, we find that Ms. Prevost failed to prove, by clear and convincing evidence, that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to Karly. Nor has she established, by clear and convincing evidence, that her sole custody of Karly is in Karly's best interest. On the contrary, after a thorough review of the record, we find that the facts and the law support that a continuation of the 1997 considered joint custody decree is in Karly's best interest.

B.

**Did the trial court commit legal error in modifying the 1997
considered joint custody decree to 50/50 shared custody?**

It is settled law that trial courts retain a continuing power to modify a child custody order; nevertheless, this power is not unfettered. As previously discussed, when a trial court has made a considered decree of permanent custody, the law imposes a heavy burden of proof upon the party seeking a change. Thus, a party seeking a modification to a previously considered decree has the obligation to carry her burden of proof should she want to succeed. Similarly, the trial court is under an equal obligation to strictly apply the pertinent burden of proof prior to granting a modification. For instance, in cases where the custody agreement subject to modification is a considered decree, as it is in this case, the heavy burden of proof, as well as the strict adherence thereof by trial courts is greatly justified since its underlying reason is "to protect children from the detrimental effects of too liberal standards in custody change cases[. Therefore,] the burden of proof should be heavy and the showing of overall or net benefit to the child must be clear." *Bergeron*, 492 So.2d at 1200.

In this case, after determining that the 1997 judgment was a considered decree, we find that the trial judge applied the incorrect rule of law as to the burden of proof since the *Bergeron* standard governed the disposition of the underlying question of fact, namely whether a modification was warranted. The trial judge, in his oral reasons for judgment, engaged in a lengthy discourse wherein he candidly shared life experiences and even drew conclusions based upon them to rule on the issue of custody. Although we commend the trial judge for his empathy and openness, it is our duty to follow the rule of the law when the law is well-settled and clear.

Here, the relevant inquiry that needed to be made was whether the continuation of the 1997 considered decree was so deleterious to Karly as to justify its modification, or, alternatively, whether Ms. Prevost or Mr. Baudin proved by clear and convincing evidence that the harm likely to be caused by a change of environment was substantially outweighed by its advantages to Karly. After a *de novo* review, we find that nowhere in the record does any evidence appear that would indicate that in light of the aforementioned standard of proof, a modification to the 1997 judgment was warranted in favor of either Ms. Prevost or Mr. Baudin.

IV.

## CONCLUSION

After a thorough *de novo* review of the entire record, we conclude that the evidence presented at trial by both parties failed to meet the *Bergeron* standard warranting a modification to the 1997 considered decree from joint custody to shared custody. Furthermore, we conclude that the modification of the 1997 judgment by the trial court from joint custody to 50/50 shared custody was unwarranted under the facts and the law. Accordingly, the trial court was legally incorrect in modifying it. Therefore, we render judgment returning the custodial arrangement of Karly Baudin to that set forth in the September 11, 1997 judgment.

**REVERSED AND RENDERED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.

11